BOWRON v. GEORGIA CASUALTY CO.

(District Court, N. D. Alabama, S. D. April 30, 1915.)

No. 2012.

1. INSURANCE ⬤➡435—INDEMNITY INSURANCE—LIABILITY.

Defendant issued a policy insuring a trustee in bankruptcy carrying on the bankrupt's business against loss from injuries to employés. The trustee, under an order of the court, sold the bankrupt's property to purchasers, who, under the order, assumed the trustee's liability to employés for injuries, and who conveyed the property to the G. Co. Between the confirmation of the sale and the delivery of title, while the business was being conducted at the purchaser's risk, the policy was treated as subsisting. An employé recovered judgment against the trustee for injuries sustained while the trustee was operating the business, and the trustee paid such judgment with a voucher check of the G. Co. It being conceded that the policy insured against loss, and not against liability, defendant contended that the bankrupt estate had suffered no loss and that it was not liable. *Held* that, while the payment by the G. Co. could not be treated as a loan which the trustee was obligated to repay, and while it was immaterial that, if payment of such judgment had not otherwise been provided for, the creditors would have been required to refund a part of their dividends, the insurer was nevertheless liable, since the requirement that the purchaser assume the liability to employés would induce the bidder to reduce its bid, while, if the purchasers, relying on the indemnity, bid without deduction for the liability assumed, they suffered the loss, and were entitled to be subrogated to the rights of the estate.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144; Dec. Dig. ⬤➡435.]

---

2. INSURANCE ☞512—INDEMNITY INSURANCE—AMOUNT OF RECOVERY.
    Under a policy insuring against loss on account of injuries to employés,
    the amount recoverable was limited to the face of the policy, with costs,
    paid by insured, and legal interest on such amounts from the date of
    payment; interest accruing pending an appeal in excess of the face of
    the policy not being recoverable.
    [Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞512.]

At Law. Action by James Bowron, trustee in bankruptcy of the Southern Iron & Steel Company, against the Georgia Casualty Company. Judgment for plaintiff.

Percy, Benners & Burr, of Birmingham, Ala., for plaintiff.
Cabaniss & Bowie, of Birmingham, Ala., for defendant.

GRUBB, District Judge. [1] This is a suit by the trustee in bankruptcy of the Southern Iron & Steel Company against the Georgia Casualty Company upon a policy of insurance, issued by that company to the trustee to indemnify him against accidents to the employés of the trustee during his operation of the plant of the bankrupt under the orders of the bankruptcy court. A judgment by an employé, one Sibert, was rendered against him, the trustee, for $5,000, which was paid by him, with interest, amounting in all to $5,315.02. The plaintiff sues to recover reimbursement for the amount paid to satisfy the judgment.

The assets of the bankruptcy estate have been sold by the trustee, first, to two individual purchasers, whose bid was assigned to the Standard Steel Company, to which company the trustee made a deed. The Standard Steel Company thereafter conveyed the property to the Gulf States Steel Company. There was an assumption by the purchasers of the trustee's liability to employés for injuries received during the course of employment, which was guaranteed by the National Surety Company. This assumption followed the parties to whom the assets were subsequently transferred, and was a binding one upon the Gulf States Steel Company at the time of the payment of the judgment. The judgment in favor of Sibert, the injured employé, against the trustee, was paid by the trustee with a voucher check of the Gulf States Steel Company, payable to the trustee and indorsed by him to the clerk of this court.

The defendant's contention is that the policy was one of indemnity against actual loss sustained by the insured, and not one of insurance against a mere liability; that there was no loss to the bankrupt estate, represented by the trustee, since the judgment was paid by the transferee of the purchasers of the assets of the bankrupt estate, under an agreement, which was part of the consideration of the purchase, that it would assume such liability of the trustee; that the loss occasioned by the payment of the judgment was consequently that of the Gulf States Steel Company, which furnished the money, and not that of the bankrupt estate; that, while the action was brought in the name of the trustee, the trustee, as plaintiff, represented the Gulf States Steel Company, and not the creditors of the bankrupt; and that payment was

BOWRON V. GEORGIA CASUALTY CO.

made by that company, and not by the plaintiff. The plaintiff concedes the policy to have been one of indemnity against loss sustained by the insured, and not an insurance against a liability. He asserts that the bankrupt estate suffered a loss by the accident to Sibert and the payment of the judgment, which was based on it, in these ways. In the first place, he asserts that the requirement of the purchasers to assume the obligations of the trustee, as part of the consideration for the purchase, was an injury to the creditors of the bankrupt estate, in that it caused the purchasers to bid less for the assets than they would have done, if the transfer had been free from any such requirement. He also asserts that the creditors would have been injured by being required to refund part of their dividends already received, in the event payment of the Sibert judgment had not been otherwise provided. He also contends that the transaction between the trustee and the Gulf States Steel Company was, in effect, an advance to the trustee for the purpose of putting him in funds to satisfy the judgment, and that the liability of the trustee to repay the amount so advanced was as binding, as would have been his liability to repay a loan made from a bank for the like purpose.

Considering these claims in the inverse order: The Gulf States Steel Company was under an obligation, as between it and the trustee, to furnish the money with which to satisfy the judgment in favor of Sibert, when it did furnish it. This liability was assumed by it, as part of the contract of purchase. For this reason it seems to me the transaction cannot be construed to be a loan or advance by it, repayment of which could be required from the trustee, but as a compliance with the purchaser's obligation for the doing of which it had, therefore, no recourse against the trustee and was entitled to no reimbursement from him.

Whatever may be the rule as to the right of the trustee to recover back from creditors, who have received dividends, in excess of what would have been paid them by reason of the failure to take into account an administration expense, the amount of such excess, the rule, it seems to me, can have no application to the facts in this case, since there can be no occasion to resort to the creditors to refund any part of their dividends received to satisfy the Sibert judgment; it having already been satisfied by the Gulf States Steel Company, and on the view I have taken of it, with no recourse on the trustee for the amount paid by it, because of its agreement with the trustee to assume the payment of the judgment.

This leaves the inquiry as to whether the bankrupt estate sustained a loss by reason of the accident that resulted in the injury to Sibert, in that, it being stipulated in the order of sale that the purchaser should assume the liability of the trustee for injuries received by his employés during his operation of the plant, a less sum was received by the trustee for distribution among the creditors for the assets sold by him than would have been received in the absence of such a stipulation in the order of sale.

It seems clear that the tendency of such a stipulation would be to induce the bidder to bid less because of it. Nor does it seem that the

exact amount of the liability assumed would have to be known to the
purchasers at the time of their bid to make the principle applicable,
though, if it were not ascertained, it might be difficult or impossible
to show the extent to which the assumption affected the bid. Loss to
the creditors would be presumed from an onerous stipulation imposed
on the bidders. If a final dividend had not at that time been paid the
creditors, and if the recovery by the trustee in this suit was to be dis-
tributed to them in the way of dividends, there would be a showing of
loss sustained by the trustee, as the representative of the creditors, of a
kind sufficient to sustain this action on the policy. However, it is con-
ceded that the amount of the recovery by the trustee, if any, will go,
not to the creditor, as an additional dividend, but to the Gulf States
Steel Company to reimburse it for the amount furnished the trustee to
satisfy the judgment.

It is therefore contended by the defendant that if injury was sus-
tained by the creditors, because a less sum was realized at the trustee's
sale for distribution among creditors, by reason of the assumption ex-
acted of the purchaser by the order of sale, than would otherwise
have been received, the purpose of this suit is still not to indemnify
the creditors for such loss, since no part of the recovery, if any, is to
go to them. In this case, however, there was an outstanding indemnity
against loss from injury to employés of the trustee during operation, at
the time the purchasers bought the assets; i. e., the policy issued to the
trustee by the defendant, on which this suit is brought. The purchasers
were, therefore, when bidding, confronted on the one hand with the
liability they were required to assume, and, as against it, the indemnity
held by the trustee as against a loss on that account. In making their
bid they would be affected by the nature of the liability, and also by
the character of the indemnity against it, if they considered the in-
demnity available to them, as I think the record shows they were
justified in doing. The creditors of the bankrupt estate would have
suffered a loss, if the bidders had considered the liability—aside
from the indemnity—in the reduction in amount of the purchase price.
This loss would have sustained a recovery by the trustee from the
defendant on the policy. If the purchasers, relying on indemnity, bid
without deduction for the liability assumed, the loss will be theirs,
instead of that of the bankrupt estate, unless the are entitled to recoup
their loss by resort to the indemnity. The same loss would have been
sustained by the creditors, but for the existence of the indemnity, and
the reliance of the purchasers on their ability to profit by it, and in that
case the trustee could have recovered the loss from the defendant on
the policy.

As I see it, the loss is not eliminated by the order of sale, but is
merely transferred from the trustee to the purchasers. The defend-
ant's agreement was to indemnify against loss on account of the acci-
dent, and, as long as the loss remains, it would seem to be immaterial
to the defendant whether the loss was paid to the plaintiff for the use
of the creditors, or for the use of the Gulf States Steel Company, as
the successor of the purchasers who had assumed it. It cannot be
presumed that the court, by its order, intended to separate the indem-

nity from the loss, and so make it totally unavailable, though the loss still remained unsatisfied. The presumption would rather be that the court intended the right to avail of the indemnity to follow the loss, and so, by its tendency to increase the bid, to preserve its value to the estate, which had paid the premium for the protection afforded by it. This would be accomplished by subrogating the Gulf States Steel Company to the rights of the trustee under the policy after it had paid the judgment. That this was the intention of the court and the parties seems reasonably clear from the orders of the court set out in the record, and is also shown by the fact that the policy issued by the defendant to the trustee was treated as still subsisting in favor of operations during the period intervening the order of confirmation of the sale and the delivery of instruments of title, when the operations were conducted for the benefit and at the risk of the purchasers.

For this reason it seems to me that the original purchasers, having presumably saved the estate a loss in the price realized for the assets by the trustee at the sale by bidding without deduction for the assumption exacted of them, in reliance of being accorded the benefit of the protection afforded by the indemnity held by the trustee against the assumed liability, ought to be subrogated to the right of the trustee to claim a loss sustained by the accident to Sibert, and which they had assumed, in a sense that would sustain this action by the trustee against the defendant, though the recovery be, and I have no doubt is, for the benefit of the Gulf States Steel Company.

The judgment having been paid in fact directly by the trustee to the clerk of this court, in view of the conclusion I have reached, it is immaterial whether the money was furnished the trustee by the Gulf States Steel Company as a loan or under its obligation to take care of the judgment.

[2] This conclusion results in a judgment for the plaintiff for the limit imposed on the policy of $5,000, together with the costs paid by the plaintiff, amounting to $148.10, with legal interest from date of payment, December 4, 1914, to the date of judgment in this cause. According to the weight of authority, interest accruing pending appeal in excess of $5,000 is not recoverable.